# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNETTE MCCARTY | ) |
| | ) |
| Plaintiff, | )   Case No. |
| | ) |
| v. | ) |
| | ) |
| MASSACHUSETTS BAY COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

### Introduction

1. Plaintiff, Annette McCarty, brings this action pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., to remedy acts of employment discrimination perpetrated against her by Massachusetts Bay Community College ("MBCC"). Plaintiff contends that MBCC discriminated against her by failing to accommodate her disabilities; by withholding certain accommodations for an unreasonably lengthy period of time; by refusing to participate in the interactive process in good-faith; and by subjecting her to disparate treatment as compared to similarly-situated employees outside of her protected class (Black/African-American).

### Jurisdiction

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111, et seq.,

1

and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff has exhausted her administrative remedies.

### Venue

3. Venue is proper in this judicial district under 42 U.S.C. § 2000e-5(f)(3) as the unlawful employment practices were committed in this judicial district; the employment records relevant to such practice are maintained and administered in this judicial district; and MBCC maintains its principal office in this judicial district.

### Parties

4. Plaintiff, Anette McCarty, a forty-six year old Black/African-American female, is a citizen of the United States and a resident of the Commonwealth of Massachusetts. At all times relevant to this suit, she was employed by MBCC as an art professor and Chair of the Art Department.

5. Defendant, Massachusetts Bay Community College, is a Commonwealth of Massachusetts educational institution operating under the auspices of the Commonwealth of Massachusetts Board of Higher Education pursuant to G.L. c. 15A, § 5.

### Statement of Facts

6. Plaintiff is a forty-six year old Black/African-American female who has been employed by MBCC since 2004 and is currently employed there.

7. Plaintiff's positions have evolved throughout the course of her employment; she began as a part-time art instructor, became a full-time Assistant Professor in the Humanities Division in 2006, became an Associate Professor of art in 2009, and a Professor in 2011. She also serves as the Chair of the College's Art Department.

8. On February 9, 2013, Plaintiff suffered an injury outside the workplace when she fell down a ten-foot stairwell, causing multiple injuries to her right arm, elbow, legs, pelvic bone and spine (the "Injury").

9. Plaintiff's Injury caused her and continues to cause her to suffer from posttraumatic persistent lumbar back pain due to disc herniation and pelvic and spinal misalignment.

10. Plaintiff's Injury has resulted in substantial impairment to the major life activities of walking, standing and sitting. Specifically, and during all times relevant to this suit, Plaintiff has, among other things, great difficulty walking (including the use of a cane), and cannot sit or stand for long periods of time.

11. Plaintiff stayed out of work on medical leave for the month of February 2013.

12. On February 11, 2013, she was placed on sick leave and leave pursuant to the Family and Medical Leave Act ("FMLA"). (See February 2013 Physicians' Notes provided to MBCC attached as Group Exhibit A).

13. Plaintiff exhausted her allotted sick leave on March 1, 2013 and she remained out of work on FMLA leave from March 1, 2013 through March 8, 2013.

14. Plaintiff returned to work in March 2013 after being summarily advised by the Assistant Director of Human Resources that she was not eligible to make use of MBCC's Sick Bank. Because she could not afford to remain out on FMLA unpaid leave, she returned to work approximately one month after the Injury.

15. Plaintiff performed her duties for the remainder of the Spring 2013 semester, but did so with constant and severe pain.

16. The Fall 2013 semester began at MBCC on September 3, 2013 and Plaintiff was assigned to teach four (4) courses in one classroom ("Art Studio") within one building, the Carney Building.

17. Plaintiff submitted a physician's note to MBCC indicating several of her physical restrictions, which included prohibitions against lifting over 10 pounds, prolonged sitting, standing and walking, repetitive bending and repetitive working above shoulder level. (See August 15, 2013 Physician Note, Exhibit B).

18. Soon after submitting this medical note, Plaintiff requested the accommodation of an "art studio assistant."

19. MBCC did not address this request. (See E-mails from Plaintiff to MBCC dated September 13, 16 and 25 of 2013 included as Exhibit C).

20. Soon thereafter, Plaintiff submitted additional medical documentation indicating her need to be out of work. (See Fall 2013 Physicians' Notes provided to MBCC attached as Group Exhibit D) (September 26, 2013 note of Dr. Rourke: "Due to medical reasons, [Plaintiff] is unable to work at this time. At this point she will need to be out of work at least 4-6 weeks.").

21. Plaintiff remained out of work for the entire Fall 2013 semester. MBCC requested additional medical documentation to explain her leave and Plaintiff provided MBCC with periodic confirmation of her medical status via notes from her medical providers. (See Group Exhibit D).

22. Plaintiff's medical leave was designated by MBCC as FMLA leave effective October 14, 2013, and Plaintiff was placed on Sick Bank leave as of that date.

4

23. Plaintiff provided notice to MBCC on December 27, 2013 that she intended to return to work for the Spring 2014 semester.

24. At that time, MBCC required Plaintiff to submit a "Fitness-For-Duty Certification" which she submitted on January 14, 2014.

25. At this time, Plaintiff also submitted a medical note, dated January 14, 2014 which specified needed accommodations ("Accommodation Note"). (See Fitness-For-Duty Certification and Accommodation Note, attached hereto as Group Exhibit E).

26. The Accommodation Note indicated that prolonged sitting increased Plaintiff's back and leg pain and that continuous sitting should be restricted to one hour. It indicated that Plaintiff would need to "get up and move around for meetings greater than 1 hour, but if this does not work, she may need to have meeting time restricted to 1 hour [or] [s]he may need to leave after 1 hour." (Group Exhibit E).

27. The Accommodation Note also stated that prolonged walking increased Plaintiff's pain and that her walking needed to be limited. It stated that, "[i]f possible her office should be in the same area/same building as the art studio to limit the amount of walking she needs to do." (Group Exhibit E).

28. Finally, the Accommodation Note stated that Plaintiff would "benefit from having an assistant to help her with copying and other tasks that require her to move around, be on her feet or do any lifting, pushing or pulling greater than 10 pounds [and that Plaintiff] need[ed] to restrict lifting to 10 pounds as well as avoid repetative [sic] bending and twisting." (Group Exhibit E).

29. MBCC initially agreed in principle to the requested accommodations. Plaintiff participated in a conference call with MBCC's Director of Human Resources, Robin

Nelson-Bailey ("HR Director"), and the president of Plaintiff's union to discuss the requested accommodations.

30. During this conference, the HR Director asked Plaintiff to come to the MBCC campus on Friday January 17, 2014 to meet with a custodian to move Plaintiff's office closer to the Art Studio.

31. During this conference, the HR Director asked Plaintiff to provide the name of a student who would become the new general art studio assistant (a request which was first made in September of 2013 but ignored). (See January 16, 2014 e-mail exchange included as part of Group Exhibit F).

32. Plaintiff returned to work at MBCC on January 22, 2014 to discover that her new office location ("Room 512") was slightly closer to the elevator than her former office. This move did not result in an effective accommodation to Plaintiff.

33. In January 2014, Plaintiff requested MBCC to move her instead to Room 519, which was immediately adjacent to the elevator.

34. A move to Room 519 was consistent with the request for reasonable accommodation and the medical directive to restrict walking.

35. In January 2014, Room 519 was occupied by a non-tenured faculty member who moved into that space roughly contemporaneously with Plaintiff's move to Room 512 and who, at that time, was enjoying a "double" office space with no other office mates.

36. In January 2014, the HR Director was made aware of Plaintiff's requested transfer to Room 519 but did not seriously consider the request.

37. Plaintiff attempted to resolve this issue through multiple communications with the College President, the Union President, and the HR Director.

38. Plaintiff again raised the issue of transfer to Room 519 on April 15, 2014 by e-mail to the HR Director. (See Group Exhibit G) ("[professor] is a non tenure[d] non disabled faculty member. She has a double office closer to the art studio. [She] does not have an office mate. She is not sharing this office…At our meeting with [union representative], he mention[ed] this fact to you. Have you looked into the matter? Can I move closer to the art studio? Currently, I am further away from the art studio. I would appreciate your help with this matter.").

39. MBCC refused to participate in the interactive dialogue regarding this requested accommodation.

40. On April 16, 2014, the HR Director responded dismissively to Plaintiff, "We have provided you with an office closer to the art studio. The accommodation is reasonable and have [sic] been met." (Group Exhibit G).

41. MBCC has identified no undue hardship in re-locating Plaintiff's office to Room 519 or any other location that would effectively address Plaintiff's needs.

42. Plaintiff has remained in Room 512 to her detriment.

43. At the time of Plaintiff's return in January 2014, MBCC also failed to provide Plaintiff with a studio assistant, as the parties had previously discussed.

44. At the request of the HR Director, Plaintiff submitted the name of a student candidate for the position in January 2014. (Group Exhibit F).

45. For nearly two months, Plaintiff heard nothing from the HR Director regarding this request.

46. In mid-March 2014, the student candidate reached out to Plaintiff, indicating the HR Director was non-responsive to phone calls. (Group Exhibit F) ("Can you tell [HR

7

Director] that I will take the Assistant position, I called her a few times but she never answers the phone.").

47. At that time, Plaintiff again contacted the HR Director regarding this issue. (Group Exhibit F).

48. The HR Director indicated that the student would begin on March 14th, 2014 and that Plaintiff must provide a list of things with which she needed assistance. (Group Exhibit F).

49. Plaintiff finally received the aid of the assistant in mid-March 2014, several months after the request was re-issued, and many months after the initial request in September 2013.

50. For this Spring 2014 semester, the Dean scheduled a recurring faculty meeting at 2:00 p.m.

51. Plaintiff's final class for the day ended at 2:00 p.m.

52. Plaintiff's disability negatively impacted her ability to get to the faculty meetings in a timely fashion.

53. Plaintiff requested a reasonable accommodation relative to the time and location of the faculty meetings.

54. MBCC rejected the request for reasonable accommodation.

55. MBCC failed to engage in an interactive process relative to this requested reasonable accommodation.

56. MBCC merely cites to the fact that Plaintiff may stand up during these meetings if she is physically uncomfortable or in pain.

57. MBCC has not addressed Plaintiff's request for modification of meeting times and/or locations.

58. MBCC has not identified any undue hardship which would result if these meeting times and/or locations were modified to accommodate Plaintiff's disability.

## Procedural History

59. Plaintiff filed a Complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 26, 2014. (EEOC Charge No. 523-2014-00330). (See Group Exhibit H). MBCC filed its Answer and Position Statement on July 1, 2014. Plaintiff responded on August 4, 2014.

60. At the conclusion of its investigation, the EEOC issued a Final Determination on February 18, 2015 which indicated that MBCC's "asserted defense does not withstand scrutiny and the Commission has determined that there is reasonable cause to believe that [MBCC] has discriminated against [Plaintiff] on account of her disability." (Group Exhibit H).

61. The Parties attempted conciliation with the EEOC which efforts were unsuccessful.

62. Pursuant to 42 U.S.C. § 2000e-5(f)(1), the matter was transferred to the U.S. Department of Justice, Civil Rights Division which declined to itself file suit, but issued a Notice of Right to Sue Within 90 Days, on December 18, 2015 (See Group Exhibit H).

## COUNT I
**(Discrimination in violation of Title I of the Americans with Disabilities Act of 1990, 42 USC s 12111, et seq. ("ADA"))**

63. Plaintiff incorporates and re-alleges Paragraphs 1-62 as if fully stated herein.

64. Plaintiff is a qualified disabled person within the meaning of the ADA. Her Injury has caused substantial impairment to the major life activities of walking, sitting and standing.

65. Plaintiff was at all times relevant able to perform the essential functions of her job with or without reasonable accommodations.

66. At all times relevant, MBCC had actual knowledge of Plaintiff's disabilities and actual knowledge of Plaintiff's requested accommodations.

67. Despite this knowledge, MBCC failed to reasonably accommodate Plaintiff.

68. MBCC otherwise failed to reasonably participate in the interactive process regarding her disabilities and the requested accommodations.

69. MBCC has acted with reckless indifference in considering and implementing Plaintiff's requested accommodations.

70. MBCC's conduct of failing to extend reasonable accommodations and/or failing to reasonably engage in the interactive process violates the ADA.

71. MBCC's violation of federal law has caused Plaintiff pain and suffering.

WHEREFORE, Plaintiff requests judgment against MBCC for compensatory damages, punitive damages, attorneys' fees, costs of litigation and all other relief deemed appropriate by this Court.

## COUNT II
**(Equitable Relief under the ADA)**

72. Plaintiff incorporates and re-alleges Paragraphs 1-71 as if fully stated herein.

73. MBCC's ongoing violation of federal law has caused irreparable harm to Plaintiff.

74. Plaintiff can only be made whole if MBCC is required to comply with the requirements of federal law relating to the provision of reasonable accommodations and MBCC's obligations to participate in the interactive process.

WHEREFORE, Plaintiff requests an order from this Court requiring MBCC to provide Plaintiff the reasonable accommodations sought and further requiring MBCC to properly and in good-faith engage in the interactive process. Specifically, Plaintiff seeks an order requiring MBCC to move Plaintiff to an office that effectively addresses her limitations and requiring

MBCC to flexibly modify the times and locations of meetings at which Plaintiff's attendance is required.

## COUNT III
### (Discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 USC s 2000e, et seq. ("Title VII"))

75. Plaintiff incorporates and re-alleges Paragraphs 1-62 as if fully stated herein.

76. MBCC has agreed to effectively accommodate similarly situated physically disabled non-Black/African-American employees by moving their offices to desired locations when such transfers do not involve any undue hardship.

77. Specifically, a similarly-situated White female who, upon information and belief, suffered from back, leg and hip problems, was appropriately granted by MBCC an office transfer to effectively accommodate her disability; Plaintiff vacated her own office to facilitate that accommodation.

78. Such differential treatment is the result of intentional discrimination in violation of Title VII.

WHEREFORE, Plaintiff requests judgment against MBCC for compensatory damages, punitive damages, attorneys' fees, costs of litigation and all other relief deemed appropriate by this Court.

## **DEMAND FOR JURY TRIAL**

79. Plaintiff hereby asserts her right to a jury trial pursuant to Fed R. Civ. P. Rule 38, on all issues so triable.

                       Respectfully submitted,
                       Annette McCarty
                       By her attorneys:

                       /s/ Daniel S. O'Connor
                       _____
                       Daniel S. O'Connor (BBO # 634218)
                       Laura A. Elkayam (BBO # 683906)
                       Shaevel & Krems, LLP
                       141 Tremont St., 3rd Fl.
                       Boston, MA 02111
                       617-556-0244

Date: March 11, 2016